# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------x

EUREKA RESOURCES, LLC,

                                Case No. 4:20-cv-02222 (MWB)

                 Plaintiff,

            -against-

                               ORAL ARGUMENT
HOWDEN ROOTS LLC,                  <u>REQUESTED</u>

                 Defendant.
------------------------------------------------------------------x

## DEFENDANT HOWDEN ROOTS LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Eureka's Opposition, which attempts to manufacture a "battle of the forms," only further reinforces the fact that the governing contract for this matter included a forum selection clause that required Eureka to file this action in New York State court. Indeed, the Opposition, which is largely devoted to Eureka's strained attempt to explain away the documentary evidence in this case, does nothing to refute the fact that Eureka's own emails unequivocally demonstrate that it received, negotiated, and accepted Howden's Proposal, culminating in the October 2019 Agreement. When confronted with this document trail, Eureka's only response is the remarkable assertion that it somehow had no way of accepting nor did it "signal[] assent" to Howden's Proposal. Eureka also meekly suggests

that because no attorneys were involved to negotiate Howden's "legal fine print" somehow that also excuses it from the agreed-upon contractual terms between two sophisticated business entities. Eureka is wrong. As demonstrated below, "a party's failure to read the terms of a contract does not make those terms any less binding." Nor does Eureka's suggestion that it "inadvertently" forwarded an internal email to Howden, where it clearly accepted Howden's "T&Cs," which included the forum selection clause, relieve it from its obligation in the contract to file any action in a New York State court.

In fact, as Eureka's Opposition confirms, Eureka has no legitimate explanation for its own written acceptance issuing its Purchase Order "per your proposal". Eureka also has no explanation as to why it spent four months negotiating an agreement and making over $1M in milestone payments pursuant to the very terms and conditions it now asserts that it never agreed to. Eureka's contorted justifications simply defy any logic, are completely contradicted by the documentary evidence, and should be rejected.

Eureka is also wrong on the law. Indeed, and contrary to Eureka's argument that this Court should be precluded from considering "matters extraneous to the pleadings," this Circuit has routinely held that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." This rule is

in place to prevent situations just like this where a Plaintiff, like Eureka, fails to attach documents that form that basis of its claims and would be dispositive in the matter.  Accordingly, it is completely appropriate for this Court to evaluate the documents submitted by Howden as they form the basis for Eureka's contract claim and require that this matter be dismissed pursuant to the contractual forum selection clause.  This is especially the case where, as here, Plaintiff's own emails demonstrate acceptance of Howden's terms and conditions.

Eureka's Opposition also fails to address any of the case law cited by Howden.  By doing so, Eureka all but concedes that Howden's forum selection clause is valid and is not unreasonable, unjust, or the result of fraud or overreaching.  Nor does Eureka have any response for *Ron-Noc Indus., Inc. v. Research-Cottrell, Inc.*, a matter that is virtually identical to the present situation here.

Finally, Eureka's request, in the alternative, that this matter be transferred, rather than dismissed, to the Western District of New York is also unavailing.  Contrary to Eureka's suggestion, the terms "forum" and "venue" are not interchangeable and thus there are no "conflicting provisions" in the agreement.  Instead, the terms of the contract are clear and unambiguous - requiring that the forum for any action is a state court in New York and that the venue be located in Erie County.

3

## I.  Eureka's Opposition Fails to Refute that the Evidence Demonstrates that it Accepted the October 2019 Agreement.

In an effort to avoid the governing contract in this matter, Eureka's Opposition takes a meandering approach to suggest that this Court should simply ignore the evidence unequivocally demonstrating that Eureka received, negotiated, and accepted Howden's Proposal.  Notably, Eureka does not refute the authenticity of any of the documents submitted by Howden but instead simply asserts that the evidence is "outside the four corners of the complaint," therefore rendering Howden's documents "irrelevant." (*See* Opp. at 14-15.)   Eureka is wrong.

It is well established in this Circuit that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Schumacher v. Souderton Area Sch. Dist*., No. CIV. A. 99-1515, 2000 WL 72047, at *4 (E.D. Pa. Jan. 21, 2000) (same).  "In ruling on a motion to dismiss, a district court may [also] consider items integral to or explicitly relied on in the complaint."  *See Bakery Barn, Inc. v. A.E. Nielsen Maskinfabrik ApS*, No. CIVA. 12-75, 2013 WL 2237687, at *2–3 (W.D. Pa. May 21, 2013) (citation omitted).  And for good reason.  As courts in this Circuit have routinely held, without such a rule "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it

relied*." See Pension Ben. Guar. Corp.*, 998 F.2d 1192, 1196 (3d Cir. 1993). That is precisely what Eureka attempts to do here.

Eureka filed this lawsuit suggesting to the Court that it purchased equipment valued over $1M and that the contract was a two-page unapproved Purchase Order from June 2019 that contained no terms or conditions.  In doing so, Eureka attempted to obscure the fact that it negotiated for four months, and accepted, Howden's Proposal, which contained the forum selection clause at issue in this lawsuit.  Eureka's failure to attach these documents is not only misleading but, and significantly here, fails to apprise the Court that Eureka provided written acceptance of Howden's Proposal.  Indeed, the documents and timeline presented by Howden indisputably establishes Eureka's acceptance of Howden's Proposal:

- On June 14, 2019, Howden sent Eureka its Proposal, which included a forum selection clause stating that the proper forum for any dispute would be a state court in Erie County, New York. (*See* Ex. A at ECF No. 19-1.)

- On June 14, 2019, following receipt of Howden's Proposal, Eureka sent an internal email confirming Eureka's receipt and review of Howden's terms and conditions (or "T&Cs") and requested that Eureka issue a purchase order: "We need a PO issued today . . . I have attached the pertinent vendor quote for this order from Howden; provides all info associated with the order (T&Cs, etc)." (*See* Ex. B at ECF No. 19-2.)

- On June 14, 2019, Eureka accepted Howden's Proposal and issued its purchase order pursuant to Howden's T&Cs:  "Attached is our PO as per your proposal." (*See* Ex. B at ECF No. 19-2.)

- The parties actively negotiated varying aspects of the terms within Howden's Proposal for four months, incorporating many terms proposed by Eureka.   (*See* Boyle Affidavit at ¶ 8, ECF No. 19.)

- On October 23, 2019, Howden sent Eureka the finalized agreement, which again contained Howden's terms and conditions.  The final agreement, which included Eureka's revised purchase order and reflected the parties' negotiated  revisions, left the choice of law and forum selection provision unchanged from the June 19 proposal.  In receiving the finalized agreement, Eureka, again, never objected to, or raised any issue with, the forum selection clause. (*See* Ex. C at ECF No. 19-3.)

- Eureka has made over $1M in milestone payments pursuant to the terms and conditions in the October 2019 Agreement. (*See* Amended Compl. ¶¶ 4, 22.; *see also* Ex. C at 22., ECF No. 19-3.)

Remarkably, and despite this documentary evidence demonstrating that Eureka accepted Howden's proposal *in writing*, "per your proposal," spent months negotiating certain terms within that proposal, and has made payments pursuant to the very terms and conditions it now states do not apply, Eureka claims in its Opposition that it had no way of accepting nor "otherwise signaled assent" to Howden's Proposal.  This argument is simply belied by the documentary evidence, including Eureka's concession that it submitted its Purchase Order "as per" Howden's Proposal and "T&Cs".  (*See* Opp. 14, 17); *see also New Berry, Inc. v. Manitoba Corp.*, No. 2:18-CV-01528-MJH, 2019 WL 452493, at *2–4 (W.D. Pa. Feb. 5, 2019) ("[a]bsent any communication of conditions or objections from Berry Metal to Manitoba in its Purchase Order, Berry Metal's email constituted its acceptance of Manitoba's Sales Order and Terms of Sale.").

These documents further make clear that Eureka's "home office acceptance clause" argument is also meritless.  Eureka completely ignores the fact that the very terms of Howden's Proposal, which Eureka claims did not provide any ability to accept, explicitly states that Eureka's submission of its Purchase Order in response to Howden's Proposal will be deemed acceptance:

> Any order that is placed with Howden will be considered acceptance of these terms . . .
>
> ***
>
> Any order that is placed with Howden is understood to be placed strictly according to all technical and commercial terms and clarifications stated in this offer. Any Purchase Order (PO) from the Purchaser will be acknowledged by Howden in writing as soon as possible subject to detailed review, comment, and clarification of the Purchaser's PO to remain in strict accordance with the terms of this offer, but may be delayed beyond customary time for acknowledgement depending on the degree of PO content and deviations from this offer contained therein.[1]

(*See* Ex. C at ECF No. 19-3, sections 1 and 2 at 25.)

Thus, and contrary to Eureka's assertions that it had no opportunity to accept, Eureka understood that by issuing its Purchase Order "per your proposal" it was accepting Howden's terms and conditions, which made crystal clear that all

---

[1] Eureka also cites to this provision in its Opposition but omits the first and last portions of the paragraph that make clear that any order placed was acceptance of Howden's terms.  (*See* Opp. at 4.)

that was needed to ripen Howden's Proposal into a contract was Eureka's
submission of its PO.  Eureka's apparent failure to fully read or understand these
terms is also no excuse.  Nor is the fact that it did not have a lawyer go through
Howden's "legal fine print."[2]  As courts have recognized, "[u]"nder both
Pennsylvania and New York law, a party's failure to read the terms of a contract
does not make those terms any less binding.  *See Roller v. Red Payments L.L.C.*,
No. CV 18-1834, 2019 WL 3802031, at *6 (E.D. Pa. Aug. 12, 2019); *see also*
*Pentecostal Temple Church v. Streaming Faith, LLC*, No. 08-cv-554, 2008 WL
4279842, at *5 (W.D. Pa. Sept. 16, 2008) (holding that the plaintiff was bound by a
forum selection clause on a website that was incorporated into a contract, and
noting that the plaintiff's failure to read the website did not excuse compliance).

Eureka's reliance on *Pollack Research & Design, Inc. v. David Round*
*Co., Inc.*, No. CV 15-3693, 2017 WL 770948, at *7 (E.D. Pa. Feb. 27, 2017) is
also unavailing.  Indeed, and given the clear language in Howden's Proposal that
Eureka's issuance of a Purchase Order is acceptance of Howden's terms, *Pollack* is
simply distinguishable from the facts in this case.  *See Pollack Research & Design,*
*Inc. v. David Round Co., Inc*., No. CV 15-3693, 2017 WL 770948, at *7 (E.D. Pa.

---

[2] *See* Affidavit of Jerel Bogdan at ¶ 2, ECF No. 34-1, conceding that Howden's
terms and conditions were received, reviewed, and negotiated by Eureka but only
that Mr. Bogdan's "negotiations . . . were limited to technical issues and pricing
information, and did not concern Howden's legal boilerplate" because Mr. Bogdan
is "not an attorney".

Feb. 27, 2017) ("[f]or a quote to constitute an offer, the seller must intend that the contract exist upon acceptance of the offer; that is, it must reasonably appear from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract.") (quotations omitted).  In fact, as Eureka's own cited case recognizes, "some price quotes are sufficiently detailed to be deemed offers, which turn a subsequent document from a buyer containing a positive response into an acceptance."  *Id*.  This is exactly what occurred in this matter.

## II.    Eureka's Conduct Demonstrates Acceptance of the October 2019 Agreement.

Even if Eureka's written confirmation is not deemed acceptance (which it is), Eureka still cannot escape the fact that it has made milestone payments pursuant to the very terms and conditions it now argues it never agreed to.  Under the UCC, "[w]here a buyer makes a definite and seasonable expression of acceptance of a seller's offer, a contract is formed on the seller's terms." *See New Berry, Inc. v. Manitoba Corp*., No. 2:18-CV-01528-MJH, 2019 WL 452493, at *2–4 (W.D. Pa. Feb. 5, 2019) (citations omitted).  Here, there can be no legitimate dispute that Eureka's payments of over $1M pursuant to Howden's terms and conditions is a clear expression by Eureka of its acceptance.  Indeed, Howden's terms and conditions in its Proposal included a clear schedule for milestone payments to be made:

5. Payment: progress payments are required, as follows:
All net 30 days from invoice.
15 % of contract value upon submittal of preliminary project schedule and order confirmation.
20 % of contract value upon submittal of first overall approval Dimension Drawing and P&ID.
10 % of contract value upon submittal of certified Dimension Drawing and P&ID.
30 % of contract value upon evidence of receipt of impeller material.
25 % of contract value upon ready for shipment status of the fan

(*See* Ex. C at 22., ECF No. 19-3.)

As reflected in Eureka's own Amended Complaint, Eureka concedes that "Plaintiff has made all payments as requested to Defendant (currently in excess of one-million dollars)" and that "Plaintiff has already paid $1,045,725 to Defendant, or more than 75% of the total purchase price under the contract." (*See* Amended Compl. ¶¶ 4, 22.).  It is no coincidence that Eureka has made payments pursuant to the exact schedule and agreement it now asserts does not apply.  In fact, the final remaining 25% due and owing to Howden only remains outstanding given that "ready shipment status of the fans" was only recently provided to Eureka. Accordingly, as the Third Circuit has held, payments made by a party pursuant to a contract, as here, "is a definite and seasonable expression of acceptance." *See Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) ("by authorizing a wire transfer of the down payment, Standard Bent Glass

demonstrated its intent to perform under the essential terms of Glassrobots's standard sales agreement.").

### III. Eureka's Reliance on its June 2019 Purchase Order Attached to its Complaint Should be Rejected Because it is Not the Purchase Order Sent to Howden in Response to its Proposal.

Howden's motion should also be granted because the June 2019 Purchase Order, which Eureka claims is the contract, attaches to its Complaint, and relies on in its Opposition, is not even the Purchase Order that was sent to Howden in response to its Proposal in June 2019. (*Compare* Ex. B, ECF No. 19-2). Notably, in its Opposition, Eureka asserts that its June 2019 Purchase Order "explicitly indicated that Howden's Proposal was "NOT INCLUDED" in Eureka's PO. (Opp. at 18). Eureka also suggests that the reference to Howden's Proposal was lined neatly below the section "NOT INCLUDED" and thus means it did not accept Howden's Proposal. Eureka even adds a red annotation box around the text to improperly suggest that the reference to Howden's Proposal is all clearly contained in, and included with, the other items below the "NOT INCLUDED" language. This representation is false.

As is clear from the face of the Purchase Order that was actually sent to Howden in June and in response to Howden's Proposal (*see* Ex. B, ECF No. 19-2), the reference to Howden's Proposal in the PO appears on an entirely different page than the items listed below the "Not Included" language. Thus, the reference to

Howden's Proposal is not part of the "Not Included" language.  Eureka's failure to attach the correct PO that it claims is the contract here and its improper attempt at mischaracterizing the document are grounds alone for dismissal.

## IV.   Eureka's Opposition Fails to Address Howden's Case Law.

As discussed above, Eureka's entire Opposition rests on the faulty and misleading premise that its June 2019 Purchase Order that it attached to the Amended Complaint sets forth all of the terms of the parties' contract.  In doing so, Eureka does not dispute that forum selection clauses "are *prima facie* valid and should be enforced." *Deckard v. Emory*, No. CV 17-5182, 2020 WL 3960421, at *6 (E.D. Pa. July 13, 2020) (citations omitted).  Nor does it dispute that the forum selection clause at issue here was not the result of fraud or overreaching or that enforcement of the forum selection clause would violate strong public policy or would be seriously inconvenient or unreasonable to Eureka.  Accordingly, Eureka has waived any opposition to these arguments.

Eureka also has no explanation for *Ron-Noc Indus., Inc. v. Research-Cottrell, Inc*., No. CIV. A. 92-CV-2164, 1992 WL 165619, at *2–5 (E.D. Pa. June 15, 1992), a matter virtually identical to the situation here.  As discussed in Howden's Opening Memorandum, the court in that case observed that while the terms and conditions "were submitted . . [for]  review . . . and were subject to negotiation. . . . [and] numerous changes and modifications were made to the

purchase orders, the forum selection clause remained unchanged." *Id*.  The court recognized that  "[a]lthough neither party chose to negotiate or change the forum selection clause, there [was] no evidence to support a conclusion that no negotiation was possible, that [the opposing party] was forced to accept the offer exactly as presented . . .  or that the bargaining power between the parties was otherwise unequal." *Id*.

## V.     Transfer is Not Appropriate.

Finally, Eureka's request, in the alternative, that this matter be transferred, rather than dismissed, to the Western District of New York must also be rejected.  As is apparent from Eureka's Opposition, Eureka conflates the meaning of the terms "venue" and "forum" and uses them interchangeably.  As Eureka's Opposition concedes, the first clause in the parties' forum selection provision is clear and "implies that the forum is state court."  (*See* Opp. 21).  But, in improperly attempting to conflate the terms venue and forum, Eureka then asserts that the parties' second clause is somehow "contradictory" because "it includes "exclusive *venue* in Erie County New York" but "implies that *forum* should be any court in Erie County." (emphasis added).  Eureka is again wrong.

Contrary to Eureka's suggestion, the terms "forum" and "venue" are not interchangeable and thus there are no "conflicting provisions" in the agreement. Instead, the terms of the contract are clear and unambiguous - requiring that the

*forum* for any action is a state court in New York (as Eureka itself concedes) and that *venue* be located in Erie County.  There is nothing in this provision that implies, in the exclusive *venue* provision, that *forum* should be any court within Erie County (a fact that Eureka itself recognizes for the forum provision).  Thus, other than Eureka's apparent preference to litigate in federal court, there is absolutely no reason (nor does Eureka provide any other reason) why this matter should be transferred rather than dismissed.  Eureka chose to ignore the terms of the agreement by filing this lawsuit in federal court in Pennsylvania.  Eureka now has to live with that decision and should be required to abide by the terms that it agreed to.[3]

## CONCLUSION

Nothing in Eureka's Opposition changes the fact that the documentary evidence and Eureka's own conduct unequivocally demonstrates that Eureka received, negotiated, and accepted Howden's Proposal, culminating in the October 2019 Agreement.  Nor can Eureka escape the fact that it has already paid over $1M in milestone payments pursuant to the very same terms and conditions it now

---

[3] Eureka's reliance on *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 134 S. Ct. 568, 574, 187 L. Ed. 2d 487 (2013) also does not alter the outcome of this motion (*See* Opp. 20.)  Whether this court ultimately denies the motion under Rule 12(b)(3) (which it should not) is irrelevant since Rule 12(b)(6), as discussed in Howden's Opening Memorandum, certainly justifies the dismissal of this lawsuit pursuant to the governing forum selection clause.

asserts that it never agreed to.  Accordingly, for the reasons discussed above, and

in Howden's Opening Memorandum, Eureka's Complaint should be dismissed.

Dated:        Philadelphia, Pennsylvania
                  March 8, 2021

                                      Respectfully Submitted,

                              LEADER BERKON COLAO
                               & SILVERSTEIN LLP

                              By: /s/ Joseph I. Fontak
                                  Joseph I. Fontak (Bar Id. 310087)
                                  1515 Market Street, Suite 1200
                                  Philadelphia, PA 19102
                                  (215) 755-0455

                                      -and-

                                  Joseph G. Colao (admitted *pro hac vice*)
                                  630 Third Avenue, 17th Floor
                                  New York, New York 10017
                                  212-486-2400

                              *Attorneys for Defendant Howden Roots LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this day served a copy of Defendant

Howden's Reply Memorandum in Further Support of its Motion to Dismiss via

ECF to all the parties of record.

This 8th day of March, 2021.

By:    /s/  Joseph I. Fontak
       **JOSEPH I. FONTAK**

*Attorneys for Defendant Howden Roots LLC*

16