# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EUREKA RESOURCES, LLC,

        Plaintiff,

    v.

HOWDEN ROOTS LLC,

        Defendant.

No. 4:20-CV-02222

(Judge Brann)

## MEMORANDUM OPINION

### AUGUST 11, 2021

## I.    BACKGROUND

On February 5, 2021, Eureka Resources, LLC filed a two-count amended complaint against Howden Roots LLC alleging breach of contract.  Howden then filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6).

The motion is now ripe for disposition; for the reasons that follow, Howden's motion is denied.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."   Under Rule 12(b)(6), a motion to dismiss "tests the legal sufficiency of a pleading"[1] and

---

[1] *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

"streamlines litigation by dispensing with needless discovery and factfinding."[2]

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive

issue of law."[3]  This is true of any claim, "without regard to whether it is based on

an outlandish legal theory or on a close but ultimately unavailing one."[4]  Rule

12(b)(6) also authorizes dismissal to enforce a forum-selection clause.[5]

Following the Roberts Court's "civil procedure revival,"[6] the landmark

decisions of *Bell Atlantic Corporation v. Twombly*[7] and *Ashcroft v. Iqbal*[8]

tightened the standard that district courts must apply to 12(b)(6) motions.[9]  These

cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and

replaced it with a more exacting "plausibility" standard.[10]

Accordingly, after the *Twombly* and *Iqbal* decisions, "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"[11]  "A claim has facial

---

[2]  *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[3]  *Id.* at 326 (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[4]  *Id.* at 327.

[5]  *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 55 (2013).  A party can enforce a forum-selection clause under Rule 12(b)(6) or the doctrine of forum non conveniens when the matter is brought in a federal court and the applicable forum-selection clause points to a state forum.  *Id*.  A party cannot enforce a forum-selection clause under Rule 12(b)(3).  *Id.* at 52.  Therefore, Howden's motion to dismiss the amended complaint pursuant to Rule 12(b)(3) is denied.

[6]  Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313, 316, 319-20 (2012).

[7]  550 U.S. 544 (2007).

[8]  556 U.S. 662, 678 (2009).

[9]  *Id.* at 670.

[10]  *Id.*

[11]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[13]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[14]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[15]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[16]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a

---

[12]  *Id.*

[13]  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[14]  *Twombly*, 550 U.S. at 556.

[15]  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[16]  *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[17]  *Iqbal*, 556 U.S. at 678.

claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[18]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[19]  Therefore, a motion ordinarily to dismiss must be converted to a motion for summary judgment for the court to consider materials outside the complaint.[20]  A court may, however, consider the full text of documents that are partially quoted in the complaint[21] as well as materials that the plaintiff relied upon in drafting and which are integral to the complaint.[22]  "[B]efore materials outside the record may become the basis for a dismissal, several conditions must be met."[23]  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[24]  It must also be clear that no material disputed issues of fact exist regarding the relevance of the document.[25]

---

[18]   *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).
[19]   *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[20]   *See id.*; Fed. R. Civ. P. 12(d).
[21]   *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co*., 75 F.3d 801, 808-09 (2d Cir.1996).
[22]   *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991).
[23]   *Faulkner*, 463 F.3d at 134.
[24]   *Id.*; *see also, e.g.*, *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).
[25]   *Faulkner*, 463 F.3d at 134.

I find that the preceding conditions have been met for documents offered in this matter relating to the formation of a contract between Howden and Eureka. This includes emails sent by Howden to Eureka in June, September, and October 2020 and purchase orders sent by Eureka to Howden in October.[26]  However, the Court will not consider the affidavit of Howden employee Brian Boyle because it is neither quoted in nor integral to the amended complaint.[27]  The Court further does not consider the document that Howden claims is the true copy of Eureka's June purchase order as there is a material dispute of fact regarding the authenticity of Howden's proffered version.

## III.   FACTS ALLEGED IN THE AMENDED COMPLAINT

Eureka is a Williamsport-based business which uses specialized machinery to recycle industrial water.[28]  Howden is an Indiana corporation and an industrial machinery supplier.[29]  On June 14, 2019, Howden employee Brian Boyle emailed a proposal to Eureka to purchase industrial machinery.[30]  This proposal includes a price estimate, the machinery to be purchased, and options for customization.[31]

---

[26]  Doc. 19-1; Doc. 19-3.
[27]  Doc. 19.
[28]  Doc. 16 at ¶ 6; Doc. 34 at 1.
[29]  Doc. 16 at ¶ 7; Doc. 24 at 2.
[30]  Doc. 19-1.
[31]  *Id.* at 1-32.

The proposal also contained several "commercial terms," including a forum-selection clause, a liquidated damages clause, and a disclaimer of liability clause.[32] The proposal further offers conflicting terms regarding the acknowledgement of orders placed with Howden.[33]  For example, it states that "[a]ny order that is placed with Howden will be considered acceptance of these terms, and any additional or non-conforming terms will be deemed a counteroffer and are not accepted."[34]  But, in the next line, it provides that "all offers and any resulting orders are subject to Howden's Board approval and acceptance."[35]

After receiving Howden's proposal, Eureka sent a purchase order to Howden later that day.[36]  According to the purchase order, Eureka would pay Howden approximately $1.4 million for certain pieces of industrial machinery.[37]  The purchase order did not include a forum-selection clause.[38]  Moreover, it appears to have expressly excluded the terms of Howden's June proposal.[39]

On September 19, 2019, Howden emailed Eureka regarding four possible changes to Eureka's order.[40]  The email indicates that Howden was preparing a

---

[32]  *Id.* at 22-23, 31-32.  The proposal designated New York state court as the appropriate forum for any dispute arising from the agreement.  *Id.* at 23, 32.
[33]  *Id.* at 22.
[34]  *Id.*
[35]  *Id.*
[36]  Doc. 16 at ¶ 11.
[37]  *Id.* at ¶ 12.
[38]  Doc. 16-1.
[39]  Doc. 16 at ¶ 17; Doc. 16-1 at 2.  In the second page of the order, it places "Howden Proposal . . . Dated 6/14/19" in a list of terms "not included" in the purchase order.  Doc. 16-1 at 2.
[40]  Doc. 19-3.

final order confirmation to send to Eureka memorializing the transaction.[41]  It also acknowledges that Howden had begun drafting drawings of the machinery to be sent.[42]  Howden then requested that Eureka send a revised purchase order.[43]  And Eureka agreed the next day.[44]

On September 23, 2019, Eureka emailed Howden regarding certain items that were expected to be, but had not yet been, delivered by mid-September.[45]  As a result, Eureka asserted that it would withhold a milestone payment until the items were delivered.[46]  Two days later, Howden emailed Eureka that is was "still on schedule for completing the project."[47]  Howden further explained that the milestone payment was not tied to the drawings to be sent to Eureka, but rather to the issuance of an order confirmation.[48]

On October 21, 2019, Eureka sent a revised purchase order to Boyle.[49]  Two days later, Howden sent Eureka an order confirmation.[50]  The confirmation contains a copy of Eureka's revised purchase order signed and dated by Boyle on

---

[41]  *Id.*

[42]  *Id.*

[43]  *Id.*

[44]  *Id.*

[45]  Doc. 16-2 at 2-3. This included final system layout drawings, final foundation plan drawings, final "GA drawings for flowers," and "[r]emainder of submittals (P&ID, instrument lists, utility lists, control documentation, LOS and Motor documents)." *Id.* at 2.

[46]  *Id.* at 3.

[47]  *Id.* at 2.

[48]  *Id.* at 1.

[49]  Doc. 19-3.

[50]  *Id.*

October 23, 2019.[51]  The purchase order made only a slight modification as to the goods to be purchased.[52]  Like the June purchase order, the revised order does not contain a forum-selection clause.[53]  It also appears to expressly disclaim incorporation of Howden's June proposal and October order confirmation.[54]

The confirmation further attached a set of terms and conditions virtually identical to those included in Howden's June proposal.[55]  This included a forum-selection clause and identical language regarding the construction of offers sent to Howden in response to any proposals.[56]  It also contains the same liquidated damages clause and disclaimer of liability clause.[57]  Eureka does not appear to have responded to the confirmation email or made any objection to its contents.

Eureka has since paid $1,045,725 to Howden.[58]  Howden originally provided that the purchases would be delivered in February 2020.[59]  However, Howden has not delivered the purchased items.[60]  Eureka now seeks damages for breach of

---

[51] *Id.* at 1-2.

[52] *Id.*

[53] *Id.*

[54] *Id.*  The October order again placed "Howden Proposal . . . dated 6/14/19" into a list of terms "not included." *Id.* at 8.  Additionally, someone handwrote "and Howden order confirmation . . . dated 10/23/2019" into that list as well.  *Id.*  While it is not clear who the author of this term is, it would appear to be either Boyle or another Howden employee as the purchase order was sent by Eureka on October 21, 2019.

[55] *Id.* at 1-35.

[56] *Compare id.* at 25-26, 35, *with* Doc. 19-1 at 22-23, 32.

[57] Doc. 19-1 at 22-23.

[58] Doc. 16 at ¶ 22.

[59] *Id.* at ¶ 23.

[60] *Id.*

contract.  Howden seeks to dismiss the complaint to enforce the forum-selection clause contained in both the June proposal and October confirmation.

## IV.   DISCUSSION

Howden moves to dismiss Eureka's amended complaint on the basis that the parties' contract contains a forum-selection clause.  To this end, Howden seeks dismissal under Rules 12(b)(3) and 12(b)(6).[61]  Alternatively, Howden contends that the Court lacks subject matter jurisdiction because the contract contains a liquidated damages clause and a disclaimer of liability clause that reduces Eureka's available damages below the $75,000 threshold required for diversity jurisdiction.

### A.   Forum-Selection Clause

The first issue that the Court must resolve is whether the parties' agreement is governed by a forum-selection clause.  Though the parties agree that a contract exists, they do not concur on its terms.  Howden argues that either the June proposal or the October order confirmation contains the terms of the parties' agreement.  In response, Eureka asserts that the terms of the June and October purchase orders, which do not contain a forum-selection clause, control the contract.

---

[61]  As discussed above, Howden's motion to dismiss the amended complaint pursuant to Rule 12(b)(3) is denied.

### 1.      Formation of the Contract

To determine the terms of the parties' agreement, it is first necessary to evaluate the terms to which the parties have mutually assented.  In other words, the Court must begin by determining the contract's formation by analyzing the elements of offer and acceptance.  An "offer" is defined under Pennsylvania law as a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."[62]

"The general rule is price quotations are not offers, but rather are mere invitations to enter into negotiations or to submit offers."[63]  In fact, "[t]he buyer's purchase order—which sets such terms as product choice, quantity, price, and terms of delivery—is usually the offer."[64]  Nevertheless, a price quotation may constitute an offer where it is sufficiently detailed, or where it is reasonably apparent from the quotation that assent "is all that is needed to ripen the offer into a contract."[65]  But, it remains true that "[w]hat transforms a quotation into an offer

---

[62]   *Kingsbury, Inc. v. GE Power Conversion UK, Ltd*, 78 F. Supp. 3d 611, 619 (E.D. Pa. 2014) (internal quotation marks omitted) (quoting *Cobaugh v. Klick-Lewis, Inc.*, 561 A.2d 1248, 1249 (Pa. Super. Ct. 1989)).

[63]   *Bergquist Co. v. Sunroc Corp.*, 777 F. Supp. 1236, 1248 (E.D. Pa. 1991) (citations omitted); *see also Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 650 (E.D. Pa. 2002).

[64]   *Reilly Foam Corp.*, 206 F. Supp. 2d at 650 (citing *Audio Visual Assocs. v. Sharp Elec. Corp.*, 210 F.3d 254, 259 (4th Cir. 2000)).

[65]   *Id.* at 651 (internal quotation marks omitted) (quoting *Bergquist*, 777 F. Supp. at 1249).

cannot be neatly defined; it depends on the manifestation of intent by the seller and the 'unique facts and circumstances of each case.'"[66]

"Evidence that the seller did not actually intend to make an offer includes: (1) the quotation lacks specificity; (2) the language of the quotation invites further negotiation; (3) the seller reserves the right to change essential terms of the contract or conditions of the contract upon its further approval; and (4) further negotiations on essential terms take place after issuance of the quote."[67] By comparison, "[f]actors that weigh in favor of a finding that a quotation is an offer include: (1) the quotation was made in response to a request for a price quote; (2) the quotation contains detailed contract terms; and (3) the quotation is unconditional."[68]

Additionally, the inclusion of a "home-office acceptance" clause generally prevents a proposal from constituting an offer.[69] A home-office acceptance clause allows a seller to reserve the right to approve offers made in response to a price quotation.[70] The presence of such a clause in a price quotation often renders the

---

[66]  *Id.* at 650-51 (quoting *Rich Prods. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 956 (E.D. Wis. 1999)).

[67]  *Kingsbury*, 78 F. Supp. at 620 (citations omitted).

[68]  *Id.* (citations omitted).

[69]  *Technographics, Inc. v. Mercer Corp.*, 777 F. Supp. 1214, 1216 (M.D. Pa. 1991) (citing *West Penn Power Co. v. Bethlehem Steel Corp.*, 348 A.2d 144, 152 (Pa. Super. Ct. 1975)).

[70]  *See InfoComp, Inc. v. Electra Prods., Inc.*, 109 F.3d 902, 905-06 (3d Cir. 1997); *Technographics*, 777 F. Supp. at 1216 (citations omitted).

quotation not an offer because it leaves the power to consummate a contract with the seller's home office.[71]

In general, an offeree's response to an offer is an expression of acceptance if the offeree demonstrates an intent to perform in accordance with the offer.[72]  If negotiating parties "agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date."[73]

Section 2206 of Pennsylvania's Uniform Commercial Code ("UCC") provides that "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances."[74]  An offeree can accept an offer without a signed writing as long as the offer does not "unambiguously indicate[] that a signed writing [is] a prerequisite to the formation of a contract."[75]  In addition, section 2206 states that "an order or offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods."[76]

---

[71]   *See Pollack Rsch. & Design, Inc. v. David Round Co.*, 2017 WL 770948, at *8 (E.D. Pa. Feb. 27, 2017).

[72]   *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 446 (3d Cir. 2003).

[73]   *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999) (internal quotation marks omitted) (quoting *Johnston v. Johnston*, 499 A.2d 1074, 1076 (Pa. Super. Ct. 1999)).

[74]   13 Pa.C.S. § 2206(a)(1).

[75]   *Adani Exports Ltd. v. AMCI Exports Corp.*, 2007 WL 4298525, at *14 (W.D. Pa. Dec. 4, 2007).

[76]   13 Pa.C.S. § 2206(a)(2).

The Court now turns to which of the five emails constitute the offer, and which, if any, constitute the acceptance.  The five emails include the June proposal, the June purchase order, the October proposal, the October purchase order, and the October order confirmation.

### a.    June Proposal

Howden's June proposal does not constitute an offer because it is an invitation to negotiate and contains a home-office acceptance clause.  In the June proposal, Howden reserved the right to change essential terms and conditions of the contract regarding the goods to be delivered and the price.  Actual negotiation also occurred after the proposal was sent.  Finally, the Court notes that the proposal was not unconditional, as it contained conflicting language regarding Howden's mode of acceptance.[77]

In addition, the June proposal's home-office acceptance clause prevents the proposal from constituting an offer.  The proposal states that "[a]ll offers and any resulting orders are subject to Howden's Board approval and acceptance."[78]  As a result, even if Eureka had attempted to accept the proposal's terms, the agreement would not have been concluded until Howden's board gave its approval.  The Court therefore finds that the June proposal did not constitute an offer.

---

[77]   The June proposal specifically identifies proposed product choices and was provided in response to earlier discussion between the parties.  However, these factors are not sufficient to outweigh the other factors indicating that the June proposal is not an offer.

[78]   Doc. 19-1 at 22.

#### b.    June Purchase Order

By contrast, the June purchase order constitutes an offer because it is sufficiently intentional, definite, and shows Eureka's willingness to enter a contract.  It contains the product choices, quantity, and price of Eureka's purchases.  The purchase order also makes clear that all Howden needs to do to conclude the agreement is accept the order.  Accordingly, the Court concludes that it constitutes an offer.  With the June purchase order established as an offer, the next question is whether it was accepted.

The Court finds that, under section 2206, Howden accepted the June purchase order by making a prompt promise to ship the goods.  This is evidenced by Howden's emails to Eurerka discussing design specifications and the shipment timeline.  Brian Boyle referred to these discussions in an email to Eureka, writing that "we spent time upfront after placement of the order to work with Eureka to make sure that we would provide the preferred layout."[79]  These discussions indicate Howden's "prompt promise to ship" the purchased ventilation machinery.

The email exchange between Boyle and Eureka is evidence that Howden began performance on the contract.  The exchange shows that Howden began creating design specifications for Eureka's order.  The contract was thus formed when Howden began performance in response to the June purchase order.

---

[79]   Doc. 16-2 at 2.

### c.    October Purchase Order

The October purchase order, which modifies the parties' agreement,

constitutes an offer for the same reasons that the June purchase order does.

Howden then accepted this offer by emailing an order confirmation and a signed

copy of the October purchase order to Eureka.  Because the email shows Howden's

intent to be bound by the October purchase order, it constitutes a written

acceptance.  Thus, Howden accepted Eureka's offer to modify the contract.

### 2.    Terms of the Contract

Having established the general contours of the parties' agreement, the

remaining issue involves whether the forum-selection clause was incorporated into

the agreement via the order confirmation.  This issue presents a classic battle of the

forms: the parties dispute the applicability of the forum-selection clause which was

included in the October order confirmation but not the October purchase order.

Under section 2207 of Pennsylvania's UCC, "an expression of acceptance or

written confirmation that includes additional or different terms operates as a legal

acceptance of the offer notwithstanding the inclusion of the new terms."[80]

However, no acceptance occurs if "acceptance is made expressly conditional on

assent to the additional or different terms"[81] like, for example, when an offeree

demonstrates "an unwillingness to proceed with the transaction unless additional or

---

[80] *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1107 (3d Cir. 1992) (internal
citations omitted).
[81] 13 Pa.C.S. § 2207(a).

different terms are included in the contract."[82] Where contracting parties are not

merchants, any additional terms are to be construed as proposals for addition to the

contract.[83]

Because Howden's acceptance of the October purchase order was not

expressly made conditional on assent to the additional terms included in the order

confirmation, and because Eureka is not a merchant, the Court finds that the

forum-selection clause is not a part of the parties' agreement.  While the

confirmation states that "[a]ny order that is placed with Howden is understood to

be placed strictly according to all technical and commercial terms and

clarifications stated in this offer,"[84] it does not state that acceptance is conditional

on *assent* to the additional terms.[85]

Finally, there is no indication that Eureka accepted the choice-of-law or

forum-selection proposals.  Howden contends that Eureka accepted the terms in

Howden's order confirmation because "Eureka has made milestone payments in

accordance with the October 23, 2019 agreement."[86]  However, the milestone

---

[82] *Step-Saver Data Sys. v. Wyse Tech.*, 939 F.2d 91, 102 (3d Cir. 1991) (citations omitted).

[83] 13 Pa.C.S. § 2207(b).  A merchant is defined as "a person who: (1) deals in goods of the kind; or (2) otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." 13 Pa.C.S. § 2104.  Here, the parties do not dispute that Eureka is not a merchant.

[84] Doc. 19-3 at 25.

[85] *DTE Energy Tech., Inc. v. Briggs Elec., Inc.*, 2007 WL 674321, at *6 (E.D. Mich. Feb. 28, 2007) (finding that the acceptance was not made conditional on assent to additional terms because the additional terms were made binding with or without the offeror's assent).

[86] Doc. 19 at 4.

payments are not connected to the choice-of-law or forum-selection proposals, but to performance of the underlying contract. Therefore, the Court finds that Eureka did not accept the choice-of-law or forum-selection proposals.

### B.     Subject Matter Jurisdiction

Howden next argues that Eureka's claim for damages will be capped at $69,715 pursuant to the liquidated damages clause and disclaimer of liability clause contained in the order confirmation. Howden concludes that the case should be dismissed for lack of subject matter jurisdiction because Eureka's damages will be capped below the $75,000 threshold provided for in 28 U.S.C. § 1332(a).[87]

The Court is not persuaded. First, as discussed above, the terms in the order confirmation are not part of the parties' agreement. Second, the amount in controversy is generally "determined from the good faith allegations appearing on the face of the complaint."[88] A complaint satisfies the "required amount in controversy unless the defendant can show to a legal certainty that the plaintiff cannot recover that amount."[89] However, the assessment of a liquidated damages clause is a fact-specific inquiry.[90] Therefore, Howden cannot show that the

---

[87]   28 U.S.C. § 1332(a) provides that a district court has diversity jurisdiction over a civil action only if the amount in controversy is greater than $75,000.

[88]   *In re Life USA Holding Inc.*, 242 F.3d 136, 143 (3d Cir. 2001) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)), *abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 566 (2005).

[89]   *Id.* (citations omitted).

[90]   *See All. Elec., Inc. v. Local Union No. 98, Int'l Bhd. Of Elec. Workers*, 1992 WL 358072, at *7 (E.D. Pa. Oct. 20, 1992) (denying summary judgment because the issue of whether the amount of liquidated damages is reasonable is a fact-specific inquiry).

liquidated damages clause is reasonable to a legal certainty.  For this reason,

Howden cannot show that Eureka cannot recover damages greater than $75,000 to

a legal certainty.

## V.   CONCLUSION

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge